UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-539-H

THE CADLE COMPANY II, INC.                                         APPELLANT

V.

GASBUSTERS PRODUCTION I LIMITED PARTNERSHIP                    APPELLEE

**MEMORANDUM OPINION**

This action is an appeal from an Order of the United States Bankruptcy Court that

partially granted a motion and an amended proof of claim filed by Appellee Gasbusters

Production I Limited Partnership, ("GPILP"). The Order awarded creditor GPILP more than

$300,000.00 from the bankruptcy estate of Debtors Clarence Lester Paul, ("Mr. Paul"),[1] and

Margaret S. Paul.  Appellant The Cadle Company II, Inc., ("Cadle"), an entity that purchased

most of the proceeds of the bankruptcy estate, now requests reversal of the bankruptcy court's

order based on numerous alleged factual and procedural errors.

The history of this case is complex and the proof surrounding the key issue at trial –

whether GPILP owns the 15 gas wells in question – is hotly contested. The bankruptcy

proceedings have spanned five years and thousands of pages and yet comprise only part of the

larger web of related lawsuits and adversary proceedings.  Leading up to the law and fact trial on

---

[1] Mr. Paul is now deceased. During the time period relevant to these proceedings, he was allegedly
operating under several business names including Bluegrass Drilling, Delstar Resources, Heritage Properties, The
Viking Group, Energy Managers, and others (collectively the "Paul Family Entities.").

the merits of GPILPs amended proof of claim, the parties filed numerous motions challenging each other's evidence and its admissibility at trial. The battle was hard fought, with each side offering diametrically opposed views of the facts and pertinent law.  It is with this backdrop that we consider Appellant's many assignments of error, and ultimately conclude that the Bankruptcy Court's decision should be affirmed.

Because the Bankruptcy Court's Order offered a thorough explanation of the factual circumstances surrounding the underlying dispute, it is unnecessary to recite here the litany of relevant facts.  Rather, this Court will address the basic procedural history of the case and then supplement each section with the additional facts necessary.

I.

The Debtors filed their Chapter 7 petition on February 6, 2004.  In June of that year, Appellee GPILP filed its proof of claim, based on the alleged breach of an agreement by Mr. Paul to operate and manage certain natural gas wells in Lawrence County, Kentucky, and for misappropriation of gas sale proceeds between 1996 and the date of the petition.

On May 13, 2005, the Bankruptcy Court approved the Chapter 7 Trustee's sale to Appellee Cadle of a cause of action pending in the Lawrence County Circuit Court, which Mr. Paul had filed against Appellee GPILP. With the Court's approval, Cadle then bought almost all of the assets of the Debtor's bankruptcy estate.

Two years later, on November 20, 2007, GPILP filed the amended Proof of Claim, asserting it was due $424,825.00.  Cadle then filed the Objection at issue, and in December 2008 the Court held a trial to hear evidence regarding 1) whether GPILP owned the wells and 2) what, if any, damages it could prove it was owed.  On May 28, 2009, in a 16-page opinion addressing

the parties' legal arguments and evidence introduced at trial, the Honorable Thomas H. Fulton, United States Bankruptcy Judge for the Western District of Kentucky, overruled Cadle's Objection in part, by granting GPILP's claim in the amount of $312,239.50.  In addition to addressing the issue of GPILP's amended proof of claim, Judge Fulton's Order also decided GPILP's related motion, which sought the return of  $25,659.33 in gas sale proceeds collected Trustee from a third-party purchaser, Appalachian Producers Services Corp., ("APSC").  Judge Fulton directed the Trustee to pay GPILP $20,861.15 from the proceeds of the APSC sales.

Cadle appeals both decisions and alleges that the Bankruptcy Court committed numerous errors. The Court will address each of these claims below.

II.

This Court sits as a court of appellate review for bankruptcy decisions pursuant to 28 U.S.C. § 158(a), which provides that the "district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."  A bankruptcy court's factual findings are reviewed for clear error; its conclusions of law are reviewed de novo.  Fed. R. Bankr. P. 8013; *In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004). A finding of fact is clearly erroneous when "although there is evidence to support the finding, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Kalamazoo River Study Group v. Rockwell Intern. Corp.*, 274 F.3d 1043, 1047 (6th Cir. 2001). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *In re: Gasel*

3

*Transp. Lines, Inc.*, 326 B.R. 683, 685-86 (6th Cir. 2005).  A bankruptcy court abuses its discretion only when it relies upon clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.  *Id.* The appellant has the burden to show factual findings are clearly erroneous. *Lerch v. Federal Land Bank*, 94 B.R. 998 (N.D.Ill. 1989).

III.

Cadle's first, third and fourth[2] assignments of error relate to the Bankruptcy Court's evidentiary rulings. The Federal Rules of Evidence apply to bankruptcy proceedings. Fed. R. Bankr. P. 9017.  Alleged violations of federal rules of evidence are reviewed under an abuse of discretion standard. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *United States v. Beverly*, 369 F.3d 516, 540 (6th Cir. 2004).

Cadle first contends that the Bankruptcy Court erred in permitting into evidence, under Federal Rules of Evidence 902(8) and 1003,[3] GPILPs Exhibits 69, 79, 84 and 85. The exhibits are photocopies of notarized settlement agreements allegedly reached in a state court action in Lawrence County, Kentucky.[4]  Additionally, Cadle argues that the Bankruptcy Court should have allowed into evidence Appellant's Exhibits 23, 26, 33, 35 and 36 – documents which would show Debtor Paul's "state of mind"[5] related to whether he willfully trespassed on GPILP's natural gas resources, or, rather, did so under a claim of right. Cadle also claims the Bankruptcy Court erred by allowing GPILP's oil and gas expert to testify about the validity of GPILPs title

---

[2] Appellant's Brief, pgs. 34-36, 39-43 (Section I, Parts A, C and D).

[3] Fed. R. Evi. 902 is the self-authentication rule; 1003 is the rule on admissibility of duplicates.

[4] Lawrence County Civil Court Action No. 94-CI-0144.

[5] Appellee objected to these exhibits on numerous grounds, including authenticity, relevancy, cumulative evidence, hearsay and data summaries.

4

to the real property at issue in the case. Though the Bankruptcy Court indicated it would give little consideration to the expert's testimony on this point, the judge did allow the expert to testify about his review of the title documents.

This Court is not convinced that the Bankruptcy Judge's above decisions were in err, much less "clearly erroneous." Fed. R. Bankr. P. 8013. As noted above, a trial court has broad discretion to determine what evidence is relevant and trustworthy and whether it should be introduced at trial. Only an abuse of discretion requires a reviewing court to disturb such decisions. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *see United States v. Beverly*, 369 F.3d 516, 540 (6th Cir. 2004). Here, the Bankruptcy Judge was well within his right to determine that Appellant did not raise a genuine question as to the authenticity of the settlement agreements, and that the Appellants' excluded exhibits were not admissible for any of the reasons Appellee raised. Finally, allowing testimony regarding title from the Appellee's expert, especially in light of the Court's acknowledgment that such testimony would carry little weight, was not an abuse of discretion.

IV.

Cadle's second assignment of error[6] arises from the Bankruptcy Court's decision to treat allegations Cadle made in a related adversary proceeding as judicial admissions, rather than as a rebuttable admission, for the purpose of the bankruptcy case. A reviewing court applies the abuse-of-discretion standard when reviewing a lower court's decision to treat a statement as a judicial admission. *MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997) (citing *United States v. Cohen*, 946 F.2d 430, 435 (6th Cir. 1991). In order to qualify as a

---

[6] Appellant's Brief, pgs. 34-39 (Section I, Part B).

judicial admission "an attorney's statements must be deliberate, clear and unambiguous." *MacDonald,* 110 F.3d at 340 (citing *Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880)). This is probably the most confusing issue in the case. The Court has spent considerable effort to understand the issue within the context of the entire case. For the reasons that follow, the Court concludes that the Bankruptcy Court's handling of it was reasonable, fair and proper.

Here, the Bankruptcy Judge treated as judicial admissions statements made by Cadle, in 06-AP-3003, that "the Paul Family Entities," including a company named Bluegrass Drilling Corporation, were essentially alter egos of Mr. Paul.[7] The Bankruptcy Court ruled that:

> On the motion filed by Gasbusters Production I Limited Partnership ("Gasbusters") seeking an order deeming the allegations of fact, including mixed statements of law and fact, in pleadings and papers filed by The Cadle Company II, Inc. ("Cadle") in adversary no. 06-AP-3003 as judicial admissions of Cadle for purposes of this bankruptcy case, and the Court being sufficiently advised, it is hereby ORDERED that the motion is GRANTED. No evidence will be admitted at the upcoming evidentiary hearing(s) for the purpose of contradicting the assertion that the bankruptcy estate is liable for any lawful claim against the debtors individually or d/b/a any Paul Family Entity ... .[8]

This decision was significant because Appellee premised its Proof of Claim on a breach

---

[7] In Adversary Proceeding 06-AP-3003, Cadle's First Amended Complaint alleged that Mr. Paul and the "Paul Family Entities," including Bluegrass Drilling Corporation, were one in the same and that the assets of the Paul Family Entities should thus be included in the bankruptcy estate. The Complaint alleged, in part: (1) that "all of the Paul Family Entities are alter egos of C. Lester Paul," (2) that "[i]n truth and in fact, the Debtors are and have been the sole owners of the Paul Family Entities since their inception, whether outright or by virtue of the fact that they are alter egos of the Debtors, and as a result, any and all assets owned by the Paul Family Entities should be held to be assets of the Debtors' Bankruptcy Estate" (3) that "[s]ince the formation of each of the Paul Family Entities, the Debtors, and in particular, C. Lester Paul, have exercised such control and dominion over the Paul Family Entities, that such entities are mere instrumentalities of the Debtors. Such control and dominion is evidence[d] by, but not limited to, the Debtors' control of the corporate actions for the Paul Family Entities, the control fo the finances of the Paul Family Entities, the intermingling of the financial records and assets of the entities, and the control over the records and actions of the Paul Family Entities, included but not limited to, control over the Paul Family Entities' bank accounts," (4) that "each of the Paul Family Entities should be deemed to be the property of the Paul Bankruptcy Estate, either because they are owned by the Debtors or are the alter-ego of the Debtors," and (5) that "the Defendants have engaged in a ... conspiracy to conceal the true ownership of the Paul Family Entities by, including but not limited to, the fabrication and/or intentional concealment of certain record of transfers, the delivery and support of perjured testimony."

[8] Doc. No. 630.

of contract between Bluegrass Drilling Corporation and GPILP.  For Appellee to recover, Debtor Paul and Bluegrass Drilling Corporation must be one in the same.  If the Bankruptcy Court had not treated Cadle's statements as judicial admissions, Cadle would have had the opportunity to try to prove that Mr. Paul and his businesses were *not* alter egos.

In arguing that it should have been able to present evidence[9] contrary to its assertions in the adversary proceeding, Cadle points to Sixth Circuit precedent that "allegations in pleadings in other actions are admissible in evidence as admissions, but are not conclusive, and should be considered in connection with any other evidence which may be offered in explanation." *Dixie Sand & Gravel Corp. v. Holland*, 255 F.2d 304, 311 (6th Cir.  1958) (citing *Anderson v. Tway*, 143 F.2d 95, 100 (6th Cir. 1944)).  While these cases espouse a rule the Court finds reasonable and at least partially applicable to its review, they do not entirely end the present analysis.

It is important to note that although the Bankruptcy Court specifically adopted as judicial admissions Cadle's statements in the *adversary proceedings*, Cadle made the same allegations in the bankruptcy action itself.  For example, in a Fed. R. Civ. P. 30(b)(6) deposition of Cadle taken as part of the bankruptcy, a Cadle representative testified that he believed the allegations in the 06-AP-3003 adversary proceeding to be true, including the allegation that Mr. Paul and his company Bluegrass Drilling Company were one in the same. Cadle's counsel also agreed to stipulate that Appellant believed that the "alter ego" allegations in the adversary proceeding were true.  Additionally, Cadle made the "alter ego" argument in other motions before the Bankruptcy Court.  For example, Cadle's Response to Objection in July 2005, noted that:

[t]o the extent that the Paul Family Children's 'argument' rests on the hotly

---

[9] Cadle never did, at the time this Motion in Limine was argued or when it filed its appeal brief, describe or offer any evidence that would tend to prove Mr. Paul and the Paul Family Entities were not one in the same.

contested assertion ... that they, not the Debtors, are the actual owners of a series of real and imagined corporate entities that the Debtors have treated as their alter egos for decades, Cadle is fully prepared to 'take the Pepsi challenge' and let the true facts emerge in an adversary proceeding... . The Objections filed by the Paul Family Children and Debtors reveal that both are concerned that the Settlement Agreement will compromise the elaborate fraud that they have perpetrated first through years of abuse of the corporate form and utilization of fictional business entries..., which represents nothing more than an attempt to shield the Debtors assets from creditors. ... If these business entities actually belong in the Debtors' Estate, as Cadle intends to prove... If, by some miracle, the Paul children can produce enough smoke and mirrors to persuade a fact-finder that they are the true owners of the business entities in question... .[10]

Though it would be helpful to have a more complete explanation of the Bankruptcy Judge's decision, this Court is not persuaded, after reviewing the record as a whole, that the Bankruptcy Judge abused his discretion.  To start, Cadle's clear position for the first two years of the bankruptcy[11] was that Mr. Paul's many companies were his alter egos and that their assets should be included in the bankruptcy estate.  Cadle settled its claims with the Paul family and related companies when they agreed to transfer the assets of the related companies to the bankruptcy estate.[12]  Furthermore, Cadle's "alter-ego" position was consistent while it benefitted Cadle and only changed when Cadle was faced with the downside of that argument. Thus, when viewing the case as a whole, the Bankruptcy Judge was within his discretion to refuse Cadle the opportunity to prove an assertion that was polar opposite to Cadle's position throughout the case. By the time GPILP filed its Amended Proof of Claim, it appears that Cadle's assertions had

_____

[10] Doc. No. 312; Cadle's Response to Objection, 7/6/05 at 5, 11-12, 14.

[11] The fact that Cadle made this assertion in the bankruptcy proceeding itself is what distinguishes this case from the *Dixie Sand* case cited by Cadle. 255 F.2d 304, 311.

[12] It appears Cadle paid the Paul children $200,000 to settle the claims in 06-AP-3003 and other related proceedings. As part of that agreement, the children retained certain assets, which were listed in the 06-AP-3003 Settlement Agreement. The company at issue here, Bluegrass Drilling Corporation, was not among the companies or assets retained by the Paul Children.

become part of the law of the case. To revisit the controversy at that time may have been unfair to the parties and inconsistent with the court's previous handling of the case. For these reasons, this Court affirms the Bankruptcy Court's decision to treat the statements as judicial admissions.

V.

Cadle next asserts[13] that the Bankruptcy Court erred in its determination that GPILP offered sufficient evidence to prove it was the owner of the 15 wells in question and thus had standing to pursue its proof of claim. According to Cadle, the Bankruptcy Court made numerous errors in coming to this conclusion, including improperly interpreting the relevant Well Transfer Documents[14] by wrongly admitting extrinsic evidence and by misstating the effect of a previous state court judgment.

This Court applies a de novo review to the Bankruptcy Court's contract interpretation and to its decision to admit extrinsic evidence to clarify ambiguities. *In re Brunswick Apartments of Trumbull County, Ltd.*, 215 B.R. 520, 522 (6th Cir. BAP 1998) (citing *United States v. Century Offshore Mgmt. Corp. (In re Century Offshore Mgmt. Corp.)*, 111 F.3d 443 (6th Cir. 1997); *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 373 (6th Cir. 1998) ("The determination of whether a contract is ambiguous, thereby making extrinsic evidence admissible for interpretive purposes, is a question of law and therefore subject to de novo review.). The Bankruptcy Court's factual findings regarding the extrinsic evidence offered to prove ownership of the wells is reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013; *see also Walter v. C.I.R.*, 753 F.2d 35, 39 (6th Cir. 1985) (nothing that tax

---

[13] Appellant's Brief, pgs. 43-52 (Section I, Part E).

[14] The "Well Transfer Documents" consist of five documents, effective as of April 1, 1994, that purported to transfer interests in the 15 wells at issue to various entities with the word "Gasbusters" in their names.

court's determination as to ownership of real estate by limited partnership was not clearly erroneous).

The Bankruptcy Court correctly stated that, under Kentucky law, a Court's primary objective is to "discover the intent of the parties through a fair examination of a document as a whole," *Babb v. Dowdy*, 17 S.W.2d 1014, 1016 (Ky. 1929), and that "where there is ambiguity and/or mutual mistake, a court may look beyond the four corners of the document in question to resolve the same." *Day v. Asher*, 132 S.W. 1035, 1036 (Ky. 1911) ("The general rule is that where an ambiguity is patent on the face of the deed it cannot be cured by parol evidence, but that where there is no ambiguity on the face of the deed and the ambiguity is shown by parol evidence it may be removed by parol evidence.); *Senters v. Elkhorn & Jellico Coal Co.*, 145 S.W.2d 848, 850 (Ky. 1940) (parol evidence admissible in cases of mutual mistake); *Virginia Iron, Coal & Coke Co. v. Combs*, 177 S.W.238, 238 (Ky. 1915) (parol evidence admissible to prove mutual mistake).

The Bankruptcy Judge went on to identify the specific latent ambiguities in the Well Transfer Documents at issue:

> First, four of the five Well Transfer Documents contemplate transfer to a limited partnership grantee whose name is substantially similar to "GasBusters Production I Limited Partnership." Various permutations of the words "GasBusters," "Partnership," "Limited" and "I"are used in the names of the grantees in those transfer documents. Only the word "Production" does not appear. No evidence was submitted that any "GasBuster" entities ever existed with the precise names given in the documents.

Because no other entities with the precise names on four of the five[15] transfer documents existed,

---

[15] The Fifth Well Transfer Document identified the transferee as GB, Inc., GPILP's general partner at the time.  Even though this entity did exist, GPILP's partnership agreement expressly allowed the general partner to conduct the business of the partnership, and presumably to hold title in its name. Because all five documents were created on the same day, just after GPILP was formed to produce and sell natural gas and to acquire the assets of

10

the Bankruptcy Judge properly admitted extrinsic evidence to resolve the latent ambiguity in the first four Well Transfer Documents. Such a decision is entirely harmonious with Kentucky law, which allows extrinsic evidence to assist the Court in determining the parties' intent.

As to the fifth transfer document, Cadle alleges error based on a footnote of the Bankruptcy Court's opinion wherein the court asserted that "the Lawrence Circuit Court Litigation resolved any claim of GB, Inc. and Mr. Polan with respect to the mineral estate in favor of GPILP." While it is unclear, from the record below,[16] whether the Lawrence Circuit Court did resolve such claims, the result of the Lawrence County litigation was just one of six different reasons the Bankruptcy Court stated for its finding that GPILP owns the wells at issue. Because the Bankruptcy Court stated numerous reasons for its finding, the fact that one of them is unclear based on the documents included in the record, does not make its finding clearly erroneous. For these reasons, Cadle's fifth assignment of error is unconvincing.

## VI.

Cadle's sixth and seventh[17] assignments of error relate to the Bankruptcy Court's calculation of the amount of GPILP's Proof of Claim. Cadle argues that the Bankruptcy Court's award of $312,239.50 to GPILP is clear error for several reasons, including 1) that damages were too speculative to calculate, 2) that the figure does not include certain payments creditable to GPILP based on prior litigation and 3) that the figure does not include "offsets" for amounts

---

Appalachian Natural Gas (the property that the Well Transfer Documents appear to transfer) it was permissible for the Bankruptcy Court judge to consider the extrinsic evidence as it related to all five Well Transfer Documents.

[16] The parties dispute why more records from the Lawrence Circuit Court action weren't included in the record. Each party appears to assert that the missing records would support their version of the facts. However, for the reasons stated herein, the issue does not have to be resolved, because the Bankruptcy Court relied on so many other pieces of evidence showing GPILP owned the wells.

[17] Appellant's Brief, pgs. 53-58 (Section I, Parts F and G).

owed to Mr. Paul. None of these arguments compel reversal.

Both parties offered experts at trial to help the Bankruptcy Court determine the proper amount of GPILP's Proof of Claim.[18] Judge Fulton's Order detailed the testimony of each expert and reduced the amount owed to GPILP by more than $100,000 based on uncertainty and conflicts in the testimony. He allotted GPILP no proceeds from the months where no reliable production numbers were available and reduced production numbers for other months. Finally, he noted Cadle's argument about credits and offsets, but found that those arguments lacked credibility and that the amounts could not be proved with any certainty.[19] Such determinations and weighing of the evidence are clearly within the purview of the trial court. Here, Judge Fulton detailed the arguments of the parties and clearly explained the reductions he made to GPILP's estimations. He determined that some evidence was clear and credible and that other evidence was not. His findings were reasonable and supported by the evidence and testimony. Thus, they did not constitute clear error.

VII.

Cadle's last assignment of error[20] is essentially rendered moot by the previous findings in this Opinion. Because the Bankruptcy Court did not err in determining that GPILP owned the wells in question, it was not error for the judge to direct the Chapter 7 Trustee to pay GPILP

---

[18] Such testimony was necessary because the meters gauging the flow of gas from the wells in question were measuring not only the flow from the 15 GPILP wells, but also three non-GPILP wells.

[19] Specifically, in regard to the credits that GPILP allegedly received, Judge Fulton found that "the only evidence submitted by Cadle in that regard does not show with any certainty what, if any funds should be credited to GPILP, and it therefore lacks credibility." As to the credits, Judge Fulton noted that "Cadle has failed to provide any credible evidence concerning the existence and, more importantly, the amount of such 'offsets.'"

[20] Appellant's Brief, pg. 59 (Section II).

12

$20,861.15 from the proceeds of the APSC gas sales.

Therefore, for all of the reasons discussed in this opinion, the Court will affirm the judgment of the Bankruptcy Court in its entirety.  The Court will issue an order consistent with this Memorandum Opinion.

cc:     Counsel of Record & Bankruptcy Court